## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

TRAVIS LANE HONAKER,

          Plaintiff,

v.                                                    CIVIL ACTION NO.   5:15-cv-03483

TOWN OF SOPHIA, et al.,

          Defendants.


### MEMORANDUM OPINION AND ORDER

The Court has reviewed the *Defendants' Motion for Summary Judgment* (Document 47), the *Memorandum of Law in Support of Defendants' Motion for Summary Judgment* (Document 48), *Plaintiff Travis Lane Honaker's Memorandum in Opposition to Defendant Town of Sophia and Defendant Patrolman Z. Issa's Motion for Summary Judgment* (Document 50), and the *Reply in Support of Defendants' Motion for Summary Judgment* (Document 57).   In addition, the Court has reviewed all attached exhibits.   For the reasons stated herein, the Court finds that the motion should be granted in part and denied in part.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Plaintiff, Travis Lane Honaker, initiated this action with a *Complaint* (Document 1) filed on March 23, 2015.   He named the Town of Sophia, the Town Council of Sophia, the Sophia Police Department, and Patrolman Z. Issa, in his individual and official capacities, as Defendants. In a *Memorandum Opinion and Order* (Document 21) issued on August 5, 2015, the Court dismissed all claims against the Town Council of Sophia and the Sophia Police Department, as

well as certain claims against the Town of Sophia and Defendant, Issa.   The following claims remain pending: Count One, alleging the Tort of Outrage against Defendant Issa; Count Two, alleging Excessive Battery against Defendant, Issa; Count Three, alleging negligence against Issa and the Town of Sophia; Count Four, alleging negligent/reckless infliction of emotional distress against Defendant Issa; Count Five, alleging negligent supervision and/or training against the Town of Sophia; and Count Six, alleging constitutional claims under 42 U.S.C. § 1983 against Defendant Issa.

The relevant facts in this case are as follows.   In the late evening of September 20, 2013, and early morning of September 21, 2013, Cara Coleman, the Plaintiff's on-and-off girlfriend, called 911 with allegations of domestic violence.   (Honaker Depo. at 71:14–74:21, att'd as Pl.'s Ex. 2) (Document 50-2.)   Officers Zachary Issa and Randy White responded to the Plaintiff's residence.   (*Id.* at 73:9-10.)   Ms. Coleman had red marks on her throat and claimed that the Plaintiff had choked her.   (*Id.* at 74:13-18.)   The Plaintiff let the officers in, denied any physical altercation with Ms. Coleman, but submitted to being handcuffed and taken into custody.   (*Id.* at 74:18–77:9.)   Defendant Issa smelled alcohol on the Plaintiff's breath, and the Plaintiff was on a number of prescription medications at the time of the incident.   (Issa Depo. at 23-24, att'd as Pl.'s Ex. 3) (Document 50-3.)   Officer White informed Defendant Issa of his observation that Ms. Coleman appeared intoxicated as well.   (*Id.*)   The Plaintiff informed the officers that he believed Ms. Coleman would steal from him if she were permitted to remain in his home with access to the keys to his safe, where he kept guns, money, and prescription medications.   (Honaker Depo. at 76:10-15.)   The parties are in agreement that the Plaintiff was generally cooperative inside the house.   (Issa Depo. at 26:9-22.)

2

Defendant Issa then took the Plaintiff outside to his police cruiser to take him to the station and to jail.   The Plaintiff repeatedly asked to return to the house to get his keys.   He admits that he was agitated and angry, but denies any physical resistance.   (Honaker Depo. at 80:17–81:21.) Defendant Issa, however, claims that the Plaintiff attempted to jerk away from him and pushed him with his arm.   (Issa Depo. at 29:7–31:11.)   The Plaintiff claims that Defendant Issa kicked him in the testicles and then kicked his legs out from under him.   He claims that Defendant Issa then kicked or stomped him several times along his ribs and arm after taking him to the ground, resulting in extreme pain and two broken ribs.   (Honaker Dep. at 82:2-17.)   Defendant Issa denies kicking or striking the Plaintiff.   He claims that he did a modified straight arm take down, then called Officer White for assistance.   (Issa Depo. at 36:20–37:18.)   Officer White came outside, and the two officers loaded the Plaintiff into Issa's car.

The Plaintiff's neighbor, Terry Williams, observed part of the incident and provided a written statement during the Plaintiff's criminal proceedings, as well as deposition testimony in the instant matter.   In his earlier written statement, he indicated that he saw the Plaintiff handcuffed outside and heard him asking to retrieve his wallet.   (Williams Statement, att'd as Pl's Ex. 5) (Document 50-5.)   Mr. Williams further wrote that the officer told the Plaintiff to shut up, then kicked him twice, causing him to fall to the ground.   (*Id.*)   According to Mr. Williams' written statement, the officer continued to kick the Plaintiff while he was on the ground, then called another officer to help him put the Plaintiff into the patrol car.   (*Id.*)

In his deposition, Mr. Williams stated that he heard the Plaintiff and Defendant Issa arguing over keys.   (Williams Depo. at 5:16-21, att'd as Pl.'s Ex. 4)   (Document 50-4.)   He looked outside and saw that the Plaintiff was handcuffed.   (*Id.* at 5:22.)   He indicated that he did not

3

have a clear view of the altercation because of the placement of the police car and the presence of a ditch, but stated that he thought the officer kicked the Plaintiff, who went down beside the patrol car.   (*Id.* at 5:23–6:3.)   Mr. Williams said it looked to him as though the officer was kicking the Plaintiff after he was on the ground, based on the body movements that he could see and the "hollering" from the Plaintiff.   (*Id.* at 6-9.)

The Plaintiff admits that he was agitated and used profane language during the drive to the Raleigh County Sherriff's Department, and continued to do so as Defendant Issa drove him to Southern Regional Jail.   (Honaker Depo. at 83:12-13; 89:4-12.)   The Plaintiff claims that he told the intake nurse at the jail that his ribs hurt.   (*Id.*at 89-91.)   The intake form indicates that the screening was discontinued because the Plaintiff answered questions inappropriately.   (Intake Forms, at 1, att'd as Def.'s Ex. 3) (Document 47-3.).   The Plaintiff's cousin bailed him out of jail within a few hours.   (Honaker Depo. at 93:22–94:4.)   He sought treatment at the VA emergency room on September 27, 2013, for cracked ribs, and claims that pre-existing mental conditions were exacerbated by the incident.   (*Id.* at 113:6–114:24.)

The Plaintiff was charged with domestic battery, disorderly conduct, and obstructing an officer.   The Magistrate Court of Raleigh County dismissed the disorderly conduct charge for lack of probable cause, and found the Plaintiff not guilty of the remaining charges following a bench trial.   The Plaintiff states that he spoke with the Chief of Police of Sophia about the alleged assault, and was told "to just drop this or something worse could happen" to him.   (*Id.* at 95:20-96:2.) The Plaintiff then contacted the mayor of Sophia, who declined to take any action, but suggested he get an attorney.

Defendant Issa testified in his deposition that he had worked as a correctional officer prior to his employment as a police officer.  He stated that he received a six week training in 2011 through the correctional system, then received additional training about self-defense, including hands-on physical training.  (Issa Depo. at 5–8.)  He was one of several defendants named in an excessive force lawsuit related to an incident while he worked at Western Regional Jail.  (*Id.* at 8–10.)  There were also approximately five "use of force reports" on Defendant Issa while he worked at Western Regional Jail, though he was never reprimanded for use of force.  (*Id.* at 10:11–11:5.)  After leaving the Western Regional Jail, Issa began working as a police officer in Mabscott, West Virginia, and went to the State Police Academy while employed there.  (*Id.* at 15:6–22.)  He has participated in numerous other training courses since completing the police academy.  (*Id.* at 16:1-22.)  The Sophia Police Department maintains a written policy with respect to use of force.  (Use of Force—Methods and Techniques, att'd as Def.'s Ex. 6) (Document 47-6.)

## STANDARD OF REVIEW

The well-established standard for consideration of a motion for summary judgment is that summary judgment should be granted if the record, including the pleadings and other filings, discovery material, depositions, and affidavits, "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a)–(c); see also *Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014).  A "material fact" is a fact that could affect the outcome of the case.  *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-*

5

*Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010).   A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor.   *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013).

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23.   When determining whether summary judgment is appropriate, a court must view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party.   *Hoschar*, 739 F.3d at 169.   However, the nonmoving party must satisfy its burden of showing a genuine factual dispute by offering more than "[m]ere speculation" or a "scintilla of evidence" in support of its position.   *Anderson*, 477 U.S. at 252; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).   If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate.   *Anderson*, 477 U.S. at 250.   On the other hand, if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."   *Celotex*, 477 U.S. at 322–23.

## DISCUSSION

### A.  *Official Capacity Claims Against Mr. Issa*

The Defendants move for summary judgment as to the claims for tort of outrage, excessive battery, negligent/reckless infliction of emotional distress, and 42 U.S.C. § 1983, as well as punitive damages, against Defendant Issa in his official capacity.   The Court indicated in its ruling

6

on the motion to dismiss that the dismissal of those claims against the Town of Sophia was also applicable as to Defendant Issa in his official capacity.   Thus, those claims will be dismissed against Mr. Issa in his official capacity.

### B.  Negligence Claims Against Defendant Issa

The Defendants next move for summary judgment on the negligence and negligent supervision/training claims against Defendant Issa.   They assert that West Virginia law provides immunity for employees of political subdivisions facing negligence allegations, and that the Plaintiff has not produced sufficient facts to support negligence claims against this Defendant. The Plaintiff argues that the negligence claim should be permitted to proceed, inasmuch as he reads the West Virginia immunity statute to permit negligence claims against employees who acted with malicious purpose.   He asserts that Defendant Issa was negligent in failing to comply with his duty to use only reasonable force against him.   In reply, the Defendants argue that the Plaintiff's factual allegations refer to intentional, and not negligent, acts.

A negligence claim in West Virginia requires a showing of duty, breach, causation, and damages.   *Hersh v. E-T Enterprises, Ltd. P'ship*, 752 S.E.2d 336, 341 (W. Va. 2013) (superseded by statute on other grounds).   "The law of this jurisdiction recognizes a distinction between negligence…and willful, wanton, and reckless misconduct.   The latter type of conduct requires a subjective realization of the risk of bodily injury created by the activity and as such does not constitute any form of negligence."   *Mandolidis v. Elkins Indus., Inc.*, 246 S.E.2d 907, 913 (W. Va. 1978) (superseded by statute on other grounds); *see also Kelly v. Checker White Cab*, 50 S.E.2d 888, 892 (W. Va. 1948) (noting that "the law recognizes a clear and valid distinction between" negligence and willful and wanton conduct).   The Honorable John T. Copenhaver,

United States District Judge for the Southern District of West Virginia, recently granted summary judgment to the defendants on negligence claims brought in an excessive force case similar to the instant matter.  *Weigle v. Pifer*, No. 2:14-CV-15087, 2015 WL 5972433, at *14 (S.D.W. Va. Oct. 14, 2015) (Copenhaver, J.) (finding it "apparent, from both the allegations in the complaint and from the remainder of the record, that the officers intended the consequences of their [use of force] during [the Plaintiff's] arrest.")

The Court finds that the Plaintiff's allegations and the factual record reveal intentional, rather than negligent, conduct by Defendant Issa.  Although the Plaintiff argues that "it is a question of fact as to if Patrolman Z. Issa intended the 'act' or the 'consequence of the act,'" intent is a necessary element.  (Pl.'s Resp. at 13–14.)  If a jury credits the Plaintiff's version of events, Defendant Issa responded to the Plaintiff's verbal demand to get his keys by kicking him in the groin, knocking him to the ground, repeatedly kicking him, then arresting him and pursuing his prosecution on partially fabricated grounds.  There is no evidence that the alleged violence was inadvertent.  No jury could find that Defendant Issa behaved as described by the Plaintiff, but did not intend to harm him.  Thus, the Plaintiff's efforts to argue on the one hand that Issa's actions were negligent rather than intentional, and on the other that West Virginia immunity does not apply because he acted with malicious purpose, are unavailing.  The motion for summary judgment as to the negligence claim against Defendant Issa should, therefore, be granted.

Although the parties did not discuss it in detail, the motion for summary judgment as to the Plaintiff's claim for negligent/reckless infliction of emotional distress must be granted for the same reasons.  The Plaintiff pled intentional, rather than negligent, conduct, and neither pled allegations nor presented evidence supporting the elements of a claim for negligent infliction of emotional

8

distress.[1]   Likewise, the motion for summary judgment as to the negligent supervision/training claim, to the extent that claim is directed at Defendant Issa, must be granted, because Issa was not responsible for his own supervision or training.

### C.  Negligence Claims Against the Town of Sophia

The Defendants seek summary judgment as to the negligence claim against the Town of Sophia, arguing that the Plaintiff did not establish that the town owed him a duty of care, and that the negligence claim is based on intentional torts.   In addition, the Town of Sophia asserts that no facts support the negligent supervision and training claim against it, as Defendant Issa completed adequate training and has not been the subject of other excessive force complaints.   Further, the Defendants assert that the Town of Sophia has appropriate policies regarding use of force.   The Plaintiff contends that the Town of Sophia, as a political subdivision, may be liable for the negligence of its employees.   He further argues that discovery was not complete with respect to the negligent training/supervision claim,[2] and sought leave to amend the complaint with a new claim for negligent hiring.[3]

As the Court found no evidence to support a negligence claim against Defendant Issa, the facts likewise cannot support a negligence claim against the Town of Sophia that rests on Defendant Issa's conduct.   The Defendants' motion for summary judgment as to negligence and negligent/reckless infliction of emotional distress claims should be granted.

---

1 Negligent infliction of emotional distress claims involve "a plaintiff [who] experience[s] serious emotional distress, after the plaintiff witnesses a person closely related to the plaintiff suffer critical injury or death as a result of the defendant's negligent conduct."   Syl. Pt. 1, *Heldreth v. Marrs*, 425 S.E.2d 157, 158 (W.Va. 1992).

2 The Court notes that Plaintiff's counsel did not file an affidavit or declaration providing reasons for his inability to present facts necessary to oppose the motion for summary judgment, as required by Rule 56(d) of the Federal Rules of Civil Procedure.   The Plaintiff has not sought to amend his response or file additional information based on the depositions taken after the close of discovery.

3 The Court notes that a motion to amend was filed on April 8, 2016, and was granted on April 20, 2016.

Under West Virginia law, to state a claim for negligent supervision or training, a Plaintiff must show that "[a municipal defendant] failed to properly supervise [an employee officer] and, as a result, [the employee officer] proximately caused injury to the [plaintiff]."   *Woods v. Town of Danville, W. V.*, 712 F.Supp.2d 502, 515 (S.D. W. Va. 2010) (citing *Taylor v. Cabell Huntington Hosp., Inc.*, 538 S.E.2d 718 (W. Va. 2000); *see also W. Virginia Reg'l Jail & Corr. Facility Auth. v. A.B.,* 766 S.E.2d 751, 773 (2014) (finding that although negligent hiring, training and supervision claims against state agencies involve discretionary functions for immunity purposes, no such limitations apply to claims against political subdivisions).   In *Taylor*, the West Virginia Supreme Court "treat[ed] negligent supervision like other claims based in negligence."   *Woods* at 515.

The Plaintiff has produced evidence that he complained to the Chief of Police of the Town of Sophia, as well as the mayor, after the incident.   He claims that instead of investigating his complaint, the chief of police threatened him with "something worse" if he did not drop the matter. In addition to the Plaintiff's allegations regarding the use of force, he claims that Defendant Issa charged him with obstructing an officer and disorderly conduct in order to conceal the officer's own unjustified use of force.   The Defendants have produced no evidence of any form of oversight with respect to charges that often follow an officer's use of force to ensure the accuracy of the officer's account of the altercation before permitting prosecution.   In essence, the Plaintiff has presented evidence that the Town of Sophia, through its police department, covered up Defendant Issa's inappropriate use of force, and further victimized the Plaintiff in doing so.   Viewing the evidence and inferences in the light most favorable to the Plaintiff, the Court finds that a jury could conclude that at least some of the Plaintiff's injuries were caused by negligent supervision.

10

Accordingly, the Defendants' motion for summary judgment as to the negligent training/supervision claim against the Town of Sophia should be denied.

### D.  Tort of Outrage/Intentional Infliction of Emotional Distress (IIED)

The Defendants argue that the Plaintiff's claim for IIED or the tort of outrage must fail because there is no evidence that Defendant Issa brought charges against the Plaintiff "without probable cause [or] with malice."   (Def.s' Mem. in Support of Mot. at 13.)   Further, the Defendants argue that Defendant Issa's alleged actions do not reach the level of severity required by West Virginia law to support the tort of outrage.   They also assert that the Plaintiff reported relatively little change in his emotional state after the incident.   The Plaintiff responds that both the excessive force and the subsequent prosecution suffice, citing his neighbor, Mr. William's characterization of the incident as "awful."   (Pl.'s Resp. at 18).

In West Virginia, the tort of outrage, or intentional infliction of emotional distress, follows the Restatement of Torts (Second):   "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."   Syl. pt. 6, *Harless v. First Nat. Bank in Fairmont*, 289 S.E.2d 692, 694 (W. Va. 1982).   The West Virginia Supreme Court has established the following elements:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

11

Syl. pt. 3, *Travis v. Alcon Labs., Inc.*, 504 S.E.2d 419, 421 (W. Va. 1998) (reaffirmed in *Hatfield v. Health Mgmt. Associates of W. Virginia*, 672 S.E.2d 395, 404 (W. Va. 2008).   The court further explained that "whether conduct may reasonably be considered outrageous is a legal question, and whether conduct is in fact outrageous is a question for jury determination."   Syl. pt. 4, *id.*

Courts have struggled to determine whether conduct may reasonably be considered outrageous.   *Courtney v. Courtney*, 413 S.E.2d 418, 422 (W. Va. 1991) (reviewing several cases considering the question).   Plaintiffs must make a showing that "the defendant's actions toward the plaintiff were atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency" and be viewed as intolerable in a civilized society.   *Travis*, 504 S.E.2d at 425. "[C]onduct that is merely annoying, harmful of one's rights or expectations, uncivil, mean-spirited, or negligent does not constitute outrageous conduct.   On the other hand, outrageous conduct can include physical violence that causes bodily harm and emotional distress."   *Courtney*, 413 S.E.2d at 423–424 (internal citations removed).

Viewing the facts and evidence in the light most favorable to the Plaintiff, he was handcuffed and offering no physical resistance when Defendant Issa kicked him in the groin, kicked his feet out from under him, then kicked or stomped him repeatedly while he was on the ground.   Defendant Issa then pursued charges based on untrue characterizations of the incident. The Court finds that this conduct could reasonably be considered outrageous.   A jury could determine that Defendant Issa's alleged conduct was intentional and malicious, and emotional distress is a natural and substantially certain result of an unjust physical attack by a police officer, particularly when accompanied by the vindictive filing of criminal charges.

The evidence of the level of emotional distress suffered by the Plaintiff in this case is mixed.   The Plaintiff testified in his deposition that he suffered emotional distress, including nervousness at the sound of sirens or the approach of vehicles at his home.    However, the Plaintiff, a veteran receiving disability benefits for post-traumatic stress disorder (PTSD), admitted that he suffered the same symptoms prior to his encounter with Mr. Issa.   He indicated that he continues to discuss this incident at his mental health appointments, but that those appointments have not increased in frequency.   (Honaker Depo. at 113–14.)   The Court declines the opportunity to conclude that the Plaintiff's pre-existing mental health problems preclude recovery for intentional infliction of emotional distress.   Determining the extent to which the Plaintiff's mental illnesses and emotional distress were exacerbated by this incident is a factual question for the jury. Therefore, the Defendants' motion for summary judgment as to the tort of outrage or IIED should be denied.

### E.   Qualified Immunity, 42 U.S.C. § 1983, and Battery

The Defendants assert that Issa is entitled to qualified immunity for all claims asserted against him because he responded appropriately and reasonably to the Plaintiff's conduct.   They cite an expert report that accepted Defendant Issa's version of the facts and concluded that his actions were reasonable and in compliance with national training and standards.   The Plaintiff challenges the conclusions of that expert, and argues that Defendant Issa responded to his verbal requests with gratuitous and unnecessary violence in violation of his constitutional rights.

Qualified immunity is an affirmative defense intended to shield public officials from civil suits arising out of their performance of job-related duties.   *See, e.g., Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009).   Defendants asserting a qualified immunity defense first bear the burden

13

of "demonstrating that the conduct of which the plaintiff complains falls within the scope of the defendant's duties." *In re Allen*, 106 F.3d 582, 594 (4th Cir. 1997) (internal quotation marks omitted.)   The defense of qualified immunity is available unless the official "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff…." *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982) (internal emphases omitted).   Officials are protected even if they make reasonable mistakes of fact or law, so long as they do not violate a clearly established statutory or constitutional right. *Pearson*, 555 U.S. at 231–32.   "A constitutional right is 'clearly established' when its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013) (internal quotation marks and citations omitted).

Courts are advised to "ask first whether a constitutional violation occurred and second whether the right violated was clearly established." [4]   *Id.*   The reasonableness analysis is objective.   Courts must "examine[] only the actions at issue and measure[] them against what a reasonable police officer would do under the circumstances," but the inquiry "must be filtered through the lens of the officer's perceptions at the time of the incident." *Rowland v. Perry*, 41 F.3d 167, 172-73 (4th Cir. 1994).   "[T]he officer's subjective state of mind is not relevant to the qualified immunity inquiry but his perceptions of the objective facts of the incident in question are." *Id.* at 173.   However, the ordinary summary judgment standard remains in effect.   The Fourth Circuit explained:

---

4 "Courts are 'permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'" *Smith v. Ray*, 781 F.3d 95, 106, fn 3 (4th Cir. 2015) (citing *Pearson v. Callahan,* 555 U.S. 223, 236 (2009)).

>Here, as in any context, summary judgment for the movant is appropriate only if (1) there are no genuine issues of material fact, and (2) on the undisputed facts the defendant as movant is entitled to judgment as a matter of law. As indicated, the narrow threshold question whether a right allegedly violated was clearly established at the appropriate level of inquiry and at the time of the challenged conduct is always a matter of law for the court, hence is always capable of decision at the summary judgment stage. Whether the conduct allegedly violative of the right actually occurred or, if so, whether a reasonable officer would have known that that conduct would violate the right, however, may or may not be then subject to determination as a matter of law. If there are genuine issues of historical fact respecting the officer's conduct or its reasonableness under the circumstances, summary judgment is not appropriate, and the issue must be reserved for trial.

*Pritchett v. Alford*, 973 F.2d 307, 312-13 (4th Cir. 1992) (internal citations omitted).

The Fourth Circuit has also explained, in the context of a qualified immunity defense to excessive force allegations, that "the objective reasonableness of force [should be viewed] in full context, with an eye toward the proportionality of the force in light of all the circumstances." *Rowland*, 41 F.3d at 173–174 (summarizing the facts in that case to state that "it is impossible to escape the conclusion that a man suffered a serious leg injury over a lost five dollar bill," where an officer pursued and tackled a man who had picked up and failed to return a five dollar bill dropped by a woman at a bus station, after the officer ordered him to return the money).   Rather than examining a single aspect of an incident in isolation, courts are to evaluate the objective reasonableness based on the totality of circumstances.   *Id.*   Factors to consider in excessive force cases include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."   *Graham v. Connor*, 490 U.S. 386, 396 (1989).

The dispute in this case is primarily factual, rather than legal.   There is little dispute as to the contextual facts.   The officers responded to a domestic violence call, the Plaintiff's girlfriend had marks around her throat, the Plaintiff cooperated with being handcuffed inside the house, the Plaintiff repeatedly demanded his keys and expressed concern that his girlfriend would rob him, and Defendant Issa took the Plaintiff outside while Officer White remained in the house with Ms. Coleman.   At that point, however, the parties' stories diverge.   The Plaintiff claims that he offered no physical resistance to his arrest, only verbally demanded his keys.   He further claims that Mr. Issa kicked him in the groin, kicked his feet out from under him, and kicked him repeatedly while he was on the ground.   Defendant Issa, meanwhile, claims that the Plaintiff tried to pull or shove away from him, and that he responded with modified straight-arm takedown until Officer White could help load the Plaintiff into the police cruiser.   He denies kicking the Plaintiff.[5]

Having reviewed the undisputed facts and having viewed the facts from Defendant Issa's perception at the time of the alleged events, the Court finds there exist genuine issues of material fact as to Defendant Issa's conduct and as to whether his alleged conduct was objectively reasonable.   While domestic violence is serious and grounds for caution on the part of responding officers, it is undisputed that the Plaintiff had been patted down, handcuffed, and removed from the residence.   He, therefore, posed little immediate threat to anyone's safety.   The Plaintiff denies any physical resistance and denies attempting to escape the control of Defendant Issa.   The Plaintiff admittedly vociferously objected to being taken to jail without securing his home and belongings, but, as the Fourth Circuit has found, speech that opposes or challenges police actions

---

[5] The parties devoted considerable effort to disputing the strength of the testimony of the Plaintiff's neighbor, who corroborated the Plaintiff's version of events.   Mr. Williams' credibility is an issue for the jury to consider.   The Plaintiff's own deposition constitutes sufficient evidence at this stage to preclude summary judgment.

is protected by the First Amendment.  *Lowe v. Spears*, 258 F. App'x 568, 570 (4th Cir. 2007) ("Arresting a person solely based on speech that questions or opposes police action violates the First Amendment.").  No reasonable officer would believe it appropriate to repeatedly kick an unresisting, handcuffed suspect.[6]   Indeed, the Defendants do not argue that Defendant Issa would be entitled to qualified immunity under the Plaintiff's version of the facts.  Applying the applicable law to the facts of this case, the Court finds Defendant Issa is not entitled to qualified immunity, and the Defendants' motion for summary judgment as to the 42 U.S.C. § 1983 and battery claims[7] should be denied.

## CONCLUSION

WHEREFORE, following thorough review and careful consideration, the Court **ORDERS** that the *Defendants' Motion for Summary Judgment* (Document 47) be **GRANTED IN PART AND DENIED IN PART.**   The Court **ORDERS** that the *Motion* be **DENIED** as to Count One, alleging the tort of outrage, Count Two, alleging excessive battery, Count Five, alleging negligent supervision and/or training against the Town of Sophia, and Count Six, alleging 42 U.S.C. § 1983 claims.   The Court **ORDERS** that the *Motion* be **GRANTED** as to Count Three, alleging negligence, Count Four, alleging negligent/reckless infliction of emotional distress, and as to all counts against Defendant Issa in his official capacity.

---

6 The Fourth Circuit recently summarized: "our precedent makes clear that a nonviolent misdemeanant who is compliant, is not actively resisting arrest, and poses no threat to the safety of the officer or others should not be subjected to unnecessary, gratuitous, and disproportionate force."  *Yates v. Terry*, No. 15-1555, 2016 WL 1258429, at *7 (4th Cir. Mar. 31, 2016) (internal quotation marks and citations omitted.)

7 It is not clear whether the Plaintiff's "excessive battery" claim is an excessive force claim brought pursuant to 42 U.S.C. § 1983 or a state law battery claim.  In either case, summary judgment is not appropriate, given the factual dispute.  West Virginia law largely reflects federal law with respect to immunity under these circumstances.  *Weigle v. Pifer*, No. 2:14-CV-15087, 2015 WL 5972433, at *9 (S.D.W. Va. Oct. 14, 2015) (Copenhaver, J.)

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:    April 23, 2016

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

18